IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LILLIAN SHIFFMAN, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**AMENDED COMPLAINT**

The United States, filing this Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), complains and alleges as follows:

1. Plaintiff, the United States, brings this lawsuit to reduce to judgment civil penalties assessed against Lillian Shiffman ("Defendant") based on her willful failure to report, pursuant to 31 U.S.C. § 5314 and its implementing regulations, her financial interest in and signature authority over one or more foreign bank accounts during 2010 and 2011.

2. A delegate of the Secretary of the Treasury of the United States referred this case to the Department of Justice in accordance with 31 U.S.C. § 3711(g)(4)(C). This action is commenced at the direction of the Attorney General of the United States.

JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

4. Jurisdiction is also conferred upon the Court pursuant to Fla. Stat. § 48.161 because Defendant is a resident of Florida who is concealing her whereabouts for purposes of evading service of process in this action.

5. On October 6, 2020, the United States sent Defendant by Federal Express a cover letter, a Notice of a Lawsuit and Request to Waive Service of a Summons, two copies of a waiver form, a copy of the complaint, and a pre-paid envelope to return an executed waiver. The package was sent to Defendant at her home at 182 Deer Lake Circle, Ormond Beach, FL 32174.

6. Pursuant to Federal Rule of Civil Procedure 4(d)(1)(F), the United States was required to give Defendant at least 30 days to return the executed waiver. As a result, the United States set a deadline of November 9, 2020.

7. Because Defendant failed to return the waiver by the deadline, the United States hired a process server on November 12, 2020. Between November 16 and December 10, 2020, the server made seven attempts at various times of day to serve Defendant at her home on Deer Lake Circle. The server spoke with Defendant's neighbor, who confirmed that Defendant was not out of town. On some of the visits, the server noticed "dim" lights on inside. During all visits, he heard one or more dogs barking. He left a note on Defendant's door on November 28, and when he returned on December 2, he noticed that it had been removed and reattached.

8. On December 23, 2020 and December 30, 2020, the United States Marshal's Service unsuccessfully attempted to serve Defendant at her home on Deer Lake Circle.

9. Defendant is aware both of this existence of this lawsuit and of the United States' attempts to serve her. In particular, Gregory Dean, a U.S.-qualified attorney based in Geneva, Switzerland, has contacted undersigned counsel regarding this case. Although Mr. Dean committed on November 24, 2020 to returning a signed waiver of service form, he has not done so.

10. Mr. Dean was in possession of correspondence sent to the Deer Lake Circle address, which further confirms that it is the correct address for Defendant.

11. Instead of waiving or accepting service, Defendant continues to evade service. As reflected above, she has so far evaded nine attempts at personal service.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1395(a) because Defendant resides in this district.

## OBLIGATION TO REPORT INTEREST IN FOREIGN ACCOUNTS

13. Federal law requires every resident or citizen of the United States who has a "financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to report that relationship annually to the Department of the Treasury. 31 C.F.R. § 1010.350(a).

14. To fulfill this requirement, a person must file a form commonly known as an FBAR. At the time of the FBAR violations alleged in this complaint, the form was called Form TD-F 90-22.1, and it was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. §§ 1010.350(a), 1010.306(c).

15. Any person who fails to report an interest in a foreign account may be subject to a civil penalty assessed by the Department of the Treasury. For violations involving the willful failure to report the existence of a foreign account, the maximum penalty that may be assessed is the greater of $100,000 or 50 percent of the balance in the foreign account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C).

## DEFENDANT'S WILLFUL FAILURE TO FILE FBARS

16. Defendant is a U.S. citizen and has been a U.S. citizen at all times relevant to this complaint.

17. In or around 2000, Defendant's husband opened an account at Bank Leumi in Israel. The customer number associated with the account ended in "76/88."

18. The account was in the name of Cartmel Partners Corp. ("Cartmel"), which was incorporated in Panama in 2000.

19. In a 2014 deferred prosecution agreement between Bank Leumi and the United States, Bank Leumi admitted that the "use of offshore entities . . . to serve as nominee accountholders" was part of how it "aided and assisted . . . U.S. taxpayers in opening and maintaining undisclosed accounts." *United States v. Bank Leumi LE-Israel B.M.*, No. 14-cr-731, ECF No. 24 at 3–4 (C.D. Cal. Dec. 23, 2014) (hereinafter "*Bank Leumi DPA*").

20. Defendant inherited the Bank Leumi account upon her husband's death in March 2005.

21. Almost immediately thereafter, Defendant began exercising control over the account. For instance, in June 2005, Defendant traveled to Israel and left handwritten instructions to purchase $200,000 of a particular security if any "new emission" of the security became available.

22. In July 2005, Michael Hunter, an Israeli attorney who was a signatory on the Bank Leumi account, wrote to Bank of Leumi to expressly give Defendant authority over the account. He wrote: "For the avoidance of doubt, it is hereby stated that each of myself and Mrs.

Lillian Margarite Shiffman can individually represent [Cartmel] and act on its behalf and [in] its name for all purposes."

23. A Declaration of Beneficiary and Parties Having Control filed with Bank Leumi in July 2005 confirms that Defendant was the sole beneficiary of the account.

24. Another Declaration of Beneficiary and Parties Having Control filed with Bank Leumi in June 2008 states that Defendant had sole control of Cartmel.

25. Defendant retained control over the Bank Leumi account until it was closed in March 2011.

26. Starting in 2005 and lasting until the closure of the Bank Leumi account in March 2011, Defendant had a financial interest in and signature authority over the account.

27. After obtaining control of the Bank Leumi account in 2005, Defendant initially received at least $5,000 per month from the account. In 2006, she increased the amount to at least $7,000 per month.

28. Defendant was actively engaged with Bank Leumi regarding the monthly distributions. For instance, in December 2005, she sent a handwritten letter to Bank Leumi asking for two distribution checks in January 2006. Similarly, in March 2007, she wrote a letter asking for $21,000 over a one-month period. She also wrote multiple letters to Bank Leumi about ensuring that her address was clearly printed on the envelopes carrying the checks.

29. In March 2010, Bank Leumi sent a letter to Cartmel, in care of Hunter. The letter stated that because the account was "for an offshore company with a U.S. beneficial owner," the bank could no longer provide services unless it received either a Form W-9 or an FBAR for Defendant.

30. In January 2011, Hunter wrote to Bank Leumi to advise that he had spoken with "our mutual client" (*i.e.*, Defendant). Hunter asked for another copy of the March 2010 letter, which Bank Leumi provided. In resending the letter, Bank Leumi stated that the account would be "closed as soon as possible" absent evidence of U.S. tax compliance.

31. Instead of demonstrating compliance with U.S. tax law, Hunter signed a form in March 2011 directing the closure of the Bank Leumi account and the transfer of its assets into an account at Isle of Man Bank. Later, the funds were transferred to Svenska Handelsbanken in Sweden.

32. Upon information and belief, Defendant had a reportable interest in both the Isle of Man Bank and Svenska Handelsbanken accounts. Indeed, Defendant continued to receive financial benefits, including monthly payments, from the overseas funds even after the closure of the Bank Leumi account.

33. Upon information and belief, Defendant maintained the bulk of the assets offshore until at least 2016, when at least some of the funds were returned to the United States.

34. There is a difference of more than $1 million between the amount that was transferred to Isle of Man Bank in 2011 and the amount that was returned to the United States in 2016. Though Defendant has accounted for some of those funds, she has refused to give a complete accounting.

35. Taxpayers who receive interest or ordinary dividends from or who have certain defined relationships with foreign bank accounts or trusts must include Schedule B along with their Form 1040 income tax returns. Schedule B asks about the existence of foreign accounts. It

also expressly references the FBAR filing requirement and asks whether the taxpayer is obligated to submit one.

36. Defendant consistently failed to disclose her offshore accounts on Schedule B. For each tax year between 2006 and 2011, Defendant's return, which she submitted under penalty of perjury, included a Schedule B that disclosed certain income from domestic sources. Each year, however, Defendant checked "no" when asked about whether she had a financial interest in or signature authority over a foreign account. The IRS was unable to locate a copy of Defendant's 2005 tax return to determine whether she similarly failed to disclose her offshore assets that year.

37. By failing to disclose her foreign assets, Defendant hid substantial amounts of taxable income from the IRS, thereby resulting in an underpayment of her income taxes.

38. In each of 2010 and 2011, Defendant's account balance at Bank Leumi remained well above $10,000.

39. Indeed, the highest balance in 2010 was $2,115,592. In 2011, the highest balance was $2,107,298.

40. Additionally, the Isle of Man Bank account had a balance well above $10,000 in 2011.

41. On or before June 30 of 2011 and 2012, Defendant was required to file an FBAR reporting her financial interest in and signature authority over the Bank Leumi account for calendar years 2010 and 2011, respectively.

42. Additionally, on or before June 30 of 2012, Defendant was required to file an FBAR reporting her interest in the Isle of Man Bank account for calendar year 2011.

43. Defendant did not timely file an FBAR for calendar year 2010 or calendar year 2011. Defendant also failed to timely submit an FBAR for calendar years 2005–2009, but the deadline for assessing penalties for those earlier years has expired.

44. Instead of disclosing her overseas assets, Defendant actively attempted to hide them from the IRS. Examples of her evasive maneuvers include:

   a. Defendant chose not to have correspondence from Bank Leumi mailed to her home in the United States. Instead, she paid an annual fee to have Bank Leumi hold her mail. Bank Leumi later admitted that its mail hold practices were part of how it "aided and assisted . . . U.S. taxpayers in opening and maintaining undisclosed accounts." *Bank Leumi DPA* at 3–4.

   b. Any records not maintained by Bank Leumi were held by Cartmel, a Panamanian entity. These records were shown periodically to Defendant, who did not retain them.

   c. Defendant admitted to the IRS that her tax return preparer asked her to fill out a worksheet each year that asked about foreign accounts and that she answered that question each year by denying that she had any.

   d. Defendant further admitted to the IRS that she never told her tax return preparer about the Bank Leumi account or the proceeds she received form it.

45. Defendant's attempts at concealment continued even after she closed the Bank Leumi account. In October 2017, as part of an attempt to convince an IRS appeals officer to administratively concede the FBAR case, Defendant represented that she never dealt with Bank Leumi regarding investments or checks. This statement is false. *See supra* ¶¶ 21, 28.

46. Defendant ultimately disclosed the Bank Leumi account to the IRS as part of the 2012 Offshore Voluntary Disclosure Program, which allowed noncompliant U.S. persons to self-report violations in exchange for limitations on penalties. Even after self-disclosing, however, Defendant continued to be evasive regarding the Isle of Man Bank and Svenska Handelsbanken accounts and uncooperative regarding the IRS's inquiries into her failure to file FBARs for years after 2011. Defendant's lack of cooperation ultimately resulted in her being removed from the Offshore Voluntary Disclosure Program.

47. Defendant's evasive actions, coupled with the express warning provided by Bank Leumi about U.S. tax compliance and FBAR requirements, demonstrate that Defendant knew of or recklessly disregarded the requirement to disclose her offshore accounts. Moreover, Defendant's inaccurate Schedule B filings demonstrate that she had constructive knowledge of the requirement dating back to at least 2007 (when her tax year 2006 return was filed).

48. Defendant's actions—including, but not limited to, submitting false answers on Schedule B, failing to inform her tax return preparer of the Bank Leumi account, handling the account in a secretive manner, underreporting her income, closing the account instead of providing proof of compliance with U.S. tax obligations, continuing to hide assets offshore even after closing the Bank Leumi account, and attempting to mislead the IRS—indicate willfulness in her failure to timely file FBARs.

COUNT I: REDUCE TO JUDGMENT WILLFUL FBAR PENALTIES FOR 2010 AND 2011

49. The United States incorporates by reference paragraphs 1–48.

50. The statute of limitations for assessment of an FBAR penalty is six years from the date the FBAR was due. 31 U.S.C. § 5321(b)(1). However, Defendant agreed to extend the time for assessing penalties for the 2010 and 2011 calendar years to December 31, 2018.

51. On October 5, 2018, a delegate of the Secretary of the Treasury assessed civil penalties against Defendant pursuant to 31 U.S.C. § 5321(a)(5)(C) based on her willful failure to file an FBAR for calendar years 2010 and 2011. The assessments were for $528,898 per year—a total of $1,057,796.

52. A Delegate of the Secretary of the Treasury gave notice to Defendant of the unpaid penalties. Despite notice and demand for payment, Defendant has failed and refused to pay the entire amount of the penalties.

53. The unpaid assessed amounts have accrued interest and other additions, including penalties pursuant to 31 U.S.C. § 3717 for failure to pay a lawful debt owed to the United States. As of October 29, 2019, Defendant owes $1,136,710.48 in FBAR penalties, failure to pay penalties, and interest for calendar years 2010 and 2011.

WHEREFORE, Plaintiff, the United States of America, prays for the following relief:

A. That the Court enter judgment in favor of the United States and against Defendant Lillian Shiffman in the amount of $1,136,710.48 as of October 29, 2019, plus interest and further additions thereafter as provided by law, for FBAR penalties for calendar years 2010 and 2011;

B. That the United States have such other and further relief, including costs, as the Court may deem just and proper.

Date: December 31, 2020

                                       Respectfully submitted,

                                       RICHARD E. ZUCKERMAN
                                       Principal Deputy Assistant Attorney General

By:

                                       */s/ Robert S. Silverblatt*
                                       ROBERT S. SILVERBLATT
                                       Virginia Bar Number 85506
                                       Trial Attorney, Tax Division
                                       U.S. Department of Justice
                                       Post Office Box 14198
                                       Ben Franklin Station
                                       Washington, D.C. 20044
                                       Telephone: (202) 514-8682
                                       Facsimile:  (202) 514-9868
                                       Robert.S.Silverblatt@usdoj.gov

                                       *Of Counsel*

                                       MARIA CHAPA LOPEZ
                                       United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been electronically filed this 31st day of December, 2020 with the Court via CM/ECF, which will serve an electronic copy on all counsel of record. Additionally, on December 31, 2020, the foregoing was sent by U.S. mail, postage prepaid, to:

> Lillian Shiffman
> 182 Deer Lake Circle
> Ormond Beach, FL 32174

s/ Robert S. Silverblatt
ROBERT S. SILVERBLATT
Trial Attorney